**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JONATHAN K. McQUAID,**

                **Plaintiff,**            **5:11-cv-801
                                                      (GLS)**

      v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

                **Defendant.**
_____

**APPEARANCES:**          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group         HOWARD D. OLINSKY, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    JOANNE JACKSON
United States Attorney       Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe
Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiff Jonathan K. McQuaid challenges the Commissioner of Social Security's denial of disability insurance benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering McQuaid's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. Background

On July 29, 2009, McQuaid filed an application for DIB under the Social Security Act ("the Act"), alleging disability since March 1, 2009.  (*See* Tr.[1] at 134-35.)  After his application was denied, (*see id.* at 59-70), McQuaid requested a hearing before an Administrative Law Judge (ALJ), which was held on July 14, 2010.  (*See id.* at 28-55, 71-73.)  On August 20, 2010, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review.  (*See id.* at 1-6, 10-27.)

McQuaid commenced the present action by filing a Complaint on July

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 8.)

13, 2011 wherein he sought review of the Commissioner's determination. (*See generally* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (*See* Dkt. Nos. 7, 8.)  Each party, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 13, 14.)

### III.  Contentions

McQuaid contends that the Commissioner's decision is tainted by the application of improper legal standards and is not supported by substantial evidence.  (*See* Dkt. No.13 at 8-24.)  Specifically, McQuaid claims that the ALJ: (1) erred in determining his Residual Functional Capacity (RFC); (2) did not apply the appropriate legal standards in evaluating his credibility; and (3) improperly relied upon the testimony of a vocational expert.  (*See id.*)  The Commissioner counters that the appropriate legal standards were used and substantial evidence supports the ALJ's decision.  (*See* Dkt. No. 14 at 3-12.)

### IV.  Facts

The court adopts the parties' undisputed factual recitations.  (*See* Dkt. No. 13 at 2-7; Dkt. No. 14 at 1.)

### V.  Standard of Review

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g) is well established and will not be repeated here.  For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.  RFC Determination

Initially, McQuaid contends that the ALJ's RFC determination "is unsupported by substantial evidence and is the product of legal error." (Dkt. No. 13 at 9).  In support of this contention McQuaid raises five arguments: first, the ALJ improperly weighed the opinion evidence of treating nurse practitioner Andrew Catalone; second, the ALJ was required to order an internal medicine examination of McQuaid; third, the ALJ committed error by failing to specifically designate the weight given to the opinion of state agency review psychologist L. Blackwell; fourth, the ALJ improperly applied the psychiatric review technique (PRT); and, finally, the ALJ erred by failing to provide a function by function analysis.  (*See id.* at 9-19.)  Conversely, the Commissioner argues that the ALJ's RFC

4

determination is supported by substantial evidence. (*See* Dkt. No. 14 at 4-9.) The court agrees with the Commissioner.

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[2] in the record. *See* 42 U.S.C. 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, Catalone filled out a mental medical source statement in July 2010 opining that McQuaid had no useful ability to, among other things, "[c]omplete a normal weekday and workweek without interruptions from psychologically based symptoms[; a]ccept instructions and respond appropriately to criticism from supervisors[; d]eal with normal work stress[;

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

5

and i]nteract appropriately with the general public." (Tr. at 335-36.) In addition, Catalone stated that on average McQuaid's mental conditions would cause him to be absent from work more than four days per month. (*See id.* at 336.) The ALJ afforded Catalone's opinion as evidenced in the medical source statement "little weight," finding it to be inconsistent with other evidence in the record. (Tr. at 21.) Specifically, the ALJ cited the diagnosis and treatment notes rendered by Catalone and Dr. Lewis Malgieri from August 2009 through June 2010 that indicated McQuaid was improving with treatment. (*See id.*) Indeed, Catalone's notes are replete with statements that McQuaid's depression and anxiety were controlled and his medication working, including on June 2, 2010 when Catalone completed a psychiatric assessment update and noted that McQuaid was getting out more and "enjoying the days." (*Id.* at 337; *see id.* at 338, 340, 343, 345, 348, 350.) Importantly, in his assessment Catalone rated McQuaid's current and past Global Assessment of Functioning (GAF) at sixty-five[3] which signifies some mild symptoms or some difficulty in social,

---

[3] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004) . A GAF of between sixty-one and sevety indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school

6

occupational, or school functioning.  (*See id.* at 337.)  Dr. Malgieri also noted continued improvement in McQuaid, stating in March 2010 that McQuaid was doing "quite well" and making increased social activities a treatment goal.  (*Id.* at 342; *see id.* at 339, 352).

Furthermore, following a review of the medical evidence in September 2009, Blackwell concluded that McQuaid retained "the ability to perform the basic demands of unskilled work."  (Tr. at 321.)  Specifically, Blackwell found that McQuaid had moderate limitations in his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  (*See id.* at 319-20.)  Blackwell also found that McQuaid had moderate limitations in his ability to interact appropriately with the general public and accept instructions and respond appropriately to supervisory criticism  (*See id.* at 320.)  Finally, Blackwell determined that McQuaid was moderately limited in his ability to  respond

---

functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000).

7

appropriately to changes in the work setting and travel in unfamiliar places or use public transportation. (*See id.*) Blackwell otherwise found no significant limitations in McQuaid's ability to remember locations and work procedures, understand, remember, and carry out simple and short instructions, operate within a schedule with regular and punctual attendance, work in coordination with or proximity to others without being distracted, and make simple work-related decisions. (*See id.* at 319-20.) According to Blackwell, McQuaid was not significantly limited in his ability to ask simple questions and request assistance, get along with coworkers and peers and maintain socially appropriate behavior, be aware of normal hazards and take appropriate precautions, and set realistic goals or independently make plans. (See *id.* at 320.)

     Notably, nurse practitioners are not "acceptable medical sources" whose medical opinions may be entitled to controlling weight, but rather are considered "other sources" whose opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *2-3 (Aug. 9, 2006); *see* 20 C.F.R. § 404.1513(a), (d)(1); *Crysler v. Astrue*, 563 F. Supp. 2d 418, 434-35 (N.D.N.Y. 2008). Accordingly, and in light of

8

inconsistencies with the remainder of the medical record, the ALJ's determination regarding the weight of Catalone's opinion is supported by substantial evidence.

On the other hand, Blackwell's opinion is reflected in the ALJ's RFC determination, finding that McQuaid can "perform a full range of work at all exertional levels." (Tr. at 17.) However, the ALJ found that McQuaid had additional nonexertional limitations which limit him to a low stress job, defined, in part, as "having only occasional decision making requirements; . . . limited to simple routine and repetitive tasks; in a work environment free of fast paced production requirements; . . . and only occasional interaction with the public, coworkers and supervisors." (*Id.*) Clearly, the ALJ considered Blackwell's opinion, although it may not be as clear what weight he assigned it, and thus, the court declines to remand this matter on that basis. (*See id.* at 20, 315-21); *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *7-8 (N.D.N.Y. Feb. 7, 2012).

McQuaid also argues that the ALJ failed to provide a more detailed assessment of his mental RFC at step four than was contained in his analysis at step three as he did not supply a complete function by function analysis. (*See id.* at 16-17.) An ALJ's determination of a claimant's mental

9

functional limitations must reflect his application of the "special technique" set out in 20 C.F.R. § 404.1520a(c)(3), which requires the ALJ to make a specific finding regarding the claimant's functional limitation with respect to four broad functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." The mental RFC assessment used at steps four and five of the sequential evaluation process requires the ALJ to, among other things, engage in a more detailed assessment of various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in § 12.00 of the Listing of Impairments.  *See* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

Here, the ALJ properly applied and documented the "special technique" in evaluating McQuaid's mental impairments at step three.  (*See* Tr. 16-17.)  Further, the ALJ explained that his RFC assessment, which he was required to complete in light of his finding that McQuaid's severe mental impairment did not meet or equal a listed impairment, "reflects the degree of limitation [that he] . . . found in the . . . mental function analysis." (*Id.* at 17.)  Thus, following his evaluation of McQuaid's mental impairments in the four broad functioning areas at step three, the ALJ engaged in a

more detailed assessment of McQuaid's mental RFC at step four. (*See id.* at 17-22.) Specifically, the ALJ considered, among other things, McQuaid's specific allegations of depression and anxiety-based limitations; the medical and other evidence related to those limitations and their effects, including the treatment notes of Catalone and Dr. Malgieri which detailed McQuaid's mood, behavior, thoughts, hygiene, concentration and focus, and ability to interact socially with others; and the medication McQuaid had taken to mitigate his anxiety and depression. (*See* Tr. at 18-22.) Accordingly, the ALJ properly relied on substantial evidence in the record to assess McQuaid's mental condition pursuant to the PRT.

Finally, McQuaid claims that the ALJ erred in failing to order an internal medicine examination in order to further develop the record with respect to McQuaid's physical limitations, and failing to perform a function by function analysis with respect to such physical limits (*See* Dkt. No. 13 at 14-15, 17-19.) In this regard, it is well-settled that the ALJ has an obligation to thoroughly develop the record, considering "all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p, 1996 WL 374184, at *5; *accord Falcon v. Apfel*, 88 F. Supp. 2d

11

87, 90-91 (W.D.N.Y. 2000); *see, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  However, where there are no obvious gaps, and the record presents "a 'complete medical history,'" the ALJ is under no duty to seek additional information before rejecting a claim.  *Rosa,* 168 F.3d at 79, n.5 (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).  Furthermore, "when there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."  SSR 96-8p, 1996 WL 374184, at *3.

Here, McQuaid failed to allege any physical limitations which left him incapable of working.  (*See* Tr. at 40, 42-47, 177-83, 204.)  Specifically, as noted by the ALJ, McQuaid testified that he was not being treated for any physical impairments.  (*See id.* at 18, 40.)  McQuaid explained that what keeps him from working is "depression, anxiety, [and] panic attacks."  (*Id.* at 32.)  Moreover, in September 2009, McQuaid completed a function report in which he stated that his ability to lift, stand, walk, sit, climb stairs, kneel, squat, reach, see, hear, talk, and use his hands was not affected by his illnesses or conditions.  (*See id.* at 181.)  Finally, while the medical

12

evidence in the record indicates that McQuaid suffered from hypertension, hyperlipidemia, and a lung nodule in the superior left lower lobe, it does not denote any physical limitations (*See id.* at 236-91.) Therefore, as there was no evidence to suggest the existence of a physical impairment that was inadequately addressed in the medical record, the ALJ did not err in failing to order a consultative examination. *See* 20 C.F.R. § 404.1517; *Falcon*, 88 F. Supp. 2d at 90-91. Further, as the ALJ's RFC assessment detailed McQuaid's specific limitations on a function by function basis, his determination was supported by substantial evidence. *cf. Hill v. Astrue*, No. 5:11-cv-00026, 2012 WL 2178925, at *8 (N.D.N.Y. June 13, 2012); *see* SSR 96-8p, 1996 WL 374184, at *5.

### B.   Credibility Determination

Next, McQuaid contends that the ALJ failed to apply the appropriate legal standards in assessing his credibility, and improperly concluded that his statements were not fully credible simply because they were inconsistent with the ALJ's own RFC finding. (*See* Dkt. No. 13 at 19-22.) The Commissioner counters that the ALJ properly considered McQuaid's subjective complaints and did not err by concluding that they were not fully credible. (*See* Dkt. No. 14 at 9-11.) Because the ALJ's assessment was

13

sufficiently articulate and based on substantial evidence, the court agrees with the Commissioner.

"[A]fter weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations regarding limitation as long as he sets forth his "reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted). Here, the ALJ properly found McQuaid's statements concerning the intensity, persistence and limiting effects of his symptoms incredible. (*See* Tr. at 21.) As the ALJ explained, McQuaids testimony was belied by the above-referenced treatment notes of Catalone and Dr. Malgieri. (*See id.* at 18-19.) In fact, the ALJ only discounted the portion which was inconsistent with the medical evidence, and specifically accounted for McQuaid's testimony regarding his anxiety and nervousness around others in his RFC. (*See id.* at 21-22.) Thus, the ALJ's credibility determination is amply supported by substantial evidence in the record.

## C. **Vocational Expert**

Finally, McQuaid takes issue with the ALJ's finding at step five. (S*ee*

14

Dkt. No. 13 at 22-24.)  Specifically, McQuaid alleges that the hypothetical question posed to the vocational expert was the product of errors in "developing the record, RFC and credibility [which] render the [s]tep five decision unsupported by substantial evidence." (*Id.* at 23.)  Further, McQuaid contends that the ALJ failed to identify and resolve a conflict between the vocational expert's testimony and the U.S. Department of Labor's Dictionary of Occupational Titles (DOT). (*See id.* at 23-24.)  The Commissioner counters, that the ALJ's hypothetical question was consistent with his RFC assessment and, conceding that there was a discrepancy between the vocational expert's testimony and the DOT, contends that the failure of the ALJ to resolve such discrepancy was harmless. (*See* Dkt. No. 14 at 11-12.)  Again, the court agrees with the Commissioner.

In making his ultimate disability determination, the ALJ must consider whether the claimant can do any other, less demanding work existing in the national economy.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c); *accord White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). If the ALJ's RFC assessment is supported by substantial evidence, it is appropriate for him to rely on that RFC assessment in questioning the

15

vocational expert.  *See Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010).  In addition to the RFC assessment, the ALJ must also rely on the claimant's age, education, past work experience, and the transferability of the claimant's skills in order to assess whether other jobs exist in the national economy which the claimant could perform.  *See* 20 C.F.R. § 404.1520(g).

In questioning the vocational expert in this case, the ALJ's hypothetical question accurately reflected his RFC assessment and credibility determination which, as discussed above, were supported by substantial evidence.  *(Compare* Tr. at 51-52, *with id.* at 17.)  As a result, the ALJ's use of the vocational expert's opinion was appropriate.  (*See id.* at 22-23, 52-53.)  Although the Commissioner concedes that one of the three jobs identified by the vocational expert as compatible with McQuaid's limitations is not listed in the DOT, the ALJ's reliance on the vocational expert's opinion was not in error.  Indeed, as the finding of one job is sufficient to demonstrate that there is other work that McQuaid could perform, McQuaid's claim that the vocational expert's testimony did not constitute substantial evidence supporting the ALJ's finding that other work existed for him is meritless.  *See* 20 C.F.R. § 404.1566(b); *Martin v.*

16

*Comm'r of Soc. Sec.,* No. 5:06-CV-720, 2008 WL 4793717, at *2 (N.D.N.Y. Oct. 30, 2008).

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and McQuaid's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 9, 2012
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court

17